(894 P.2d 239)
No. 72,065

VICKIE A. SCRUGGS, as natural guardian and next friend of JOHN C. SCRUGGS, a minor child, *Appellant*, v. STEVEN CHANDLEE, *Appellee*.

Opinion filed April 21, 1995.

*Jane Frydman*, of Lawrence, for appellant.

*John M. Knox*, of Riling, Burkhead, Fairchild, & Nitcher, Chartered, of Lawrence, for appellee.

Before LARSON, P.J., PIERRON, J., and NELSON E. TOBUREN, District Judge, assigned.

TOBUREN, J.: Vickie Scruggs appeals the trial court's judgment determining current child support owed by Steven Chandlee and

the amount to be withheld under income withholding to satisfy his past due support obligation.

Vickie and Steven are the natural parents of one minor child, John. John lives with Vickie. Steven has two other children from his current marriage who live with him. Steven also pays child support for a fourth child, Amanda, who has always lived with her mother.

Vickie sought an increase in child support. The trial court adjusted Steven's gross income at Line C.2. of the child support worksheet in an amount equal to Steven's court-ordered child support payments for Amanda. See Kansas Child Support Guidelines (1994 Kan. Ct. R. Annot. 91). The trial court also calculated Steven's child support obligation for John using the four-child families support schedule of the guidelines (1994 Kan. Ct. R. Annot. 113) rather than the three-child schedule (1994 Kan. Ct. R. Annot. 111). Steven's adjusted child support obligation was thus reduced.

Both parties refer to the multiple-family adjustment provisions of the guidelines. Vickie argues that the three-child families support schedule should be used because the total number of Steven's children who reside with either Steven or Vickie is three. Steven argues that the four-child schedule is appropriate because he supports four children.

Interpretation of the guidelines is a question of law; therefore, this court's standard of review is de novo. *In re Marriage of Hansen*, 18 Kan. App. 2d 712, 716, 858 P.2d 1240 (1993).

Both parties cite the only Kansas case which even indirectly addresses the multiple-family adjustment. *In re Marriage of Hansen*, 18 Kan. App. 2d at 716. *Hansen* does not address the situation where a noncustodial parent supports both children who live with him and children who do not.

Steven notes that emphasis is given throughout the guidelines and the *Hansen* opinion to consideration of the total number of children a parent is obligated to support. That language may be read in support of either party to this action. The four children Steven must support are considered by allowing him the gross

income adjustment for his nonresidential child and using the three-child schedule for the other three children.

Administrative Order No. 83 (1993 Kan. Ct. R. Annot. 71) promulgated the child support guidelines in effect when this case was decided. Three sections of the guidelines refer to the multiple-family adjustment. Section II.K. defines the term, section IV.E. contains instructions on its application, and section V.D.3. contains examples of child support computations. Effective August 1, 1994, Administrative Order No. 90 (1994 Kan. Ct. R. Annot. 83) revised and superseded the guidelines promulgated by Administrative Order No. 83. The definition and explanation section found at section II.K. contains the only revision pertinent to this case.

The examples found at section V.D.3. do not address the facts presented here. The gross income adjustment for child support paid for another nonresidential child under another court order is not considered in those examples, and the examples do not indicate where the children from the subsequent marriages reside.

Section IV.E. of Administrative Order No. 83 provides instruction for the application of the multiple-family adjustment. "For the Multiple-Family Adjustment, if the noncustodial parent has children by another relationship who reside with him/her, the Child Support Schedule representing the total number of children that the noncustodial parent is obligated to support shall be used in determining the basic support obligation." (1993 Kan. Ct. R. Annot. 76.)

The definitions section of Administrative Order No. 83, section II.K. provides as follows: "The Multiple-Family Adjustment is used to adjust the noncustodial parent's child support obligation when the noncustodial parent has legal financial responsibility for the support of other children besides the children shared with the custodial parent." (1993 Kan. Ct. R. Annot. 75).

That wording was changed by Administrative Order No. 90, and is now found at section II.L. of that order. The word "besides" was removed and language substituted to read as follows: "The Multiple-Family Adjustment is used to adjust the noncus-

todial parent's child support obligation when the noncustodial parent has legal financial responsibility for the support of other children *who reside with the noncustodial parent* in addition to the children shared with the custodial parent." (Emphasis added.) (1994 Kan. Ct. R. Annot. 86).

Instruction with respect to preexisting court-ordered child support payment obligations in other cases is found at section V.C.2. "Pre-existing child support obligations in *other cases* shall be deducted to the extent that these support obligations are actually paid. These amounts are entered on Line C.2. [of the Child-Support Worksheet]." (Emphasis added.) (1993 Kan. Ct. R. Annot. 77).

The multiple-family adjustment definition, instructions, and examples found in the guidelines contemplate situations where noncustodial parents have children from another relationship who reside in the home of the noncustodial parent. The application instruction makes reference to children who reside with the noncustodial parent. The guidelines, as amended, instruct that the multiple-family adjustment is used to adjust the noncustodial parent's support obligation when that parent has responsibility for the support of "other children who reside with the noncustodial parent." Section V.C.2. instructs that existing child support obligations in "other cases" are to be deducted as adjustments to gross income. The construction urged by Steven would grant double credit to noncustodial parents, first by adjusting the domestic gross income in an amount equal to child support payments made and then by applying the schedule that would include the child for whom that adjustment was made.

We conclude that the multiple-family adjustment provisions of the child support guidelines are to be applied to the noncustodial parent's children who reside in the noncustodial parent's household. In choosing the correct child support schedule, a noncustodial parent's other children who reside with the noncustodial parent are added to the children of the parties whose support obligations are at issue. Adjustments for child support payments for children who do not reside with the noncustodial parent are to be made at Line C.2. of the child support worksheet pursuant to section V.C.2. of the guidelines.

In this instance, Steven's two children who reside with him and the child at issue, John, are counted. The three-child schedule is to be used. Child support payments Steven makes under court order in another case for his child who does not reside with him are to be considered as an adjustment to Steven's gross income under Line C.2. of the worksheet.

This construction is consistent with *Hansen*. That case involved a divided custody situation where the parties had two children. Each party had custody of one child. *Hansen* instructs that the two-child schedule is to be used in determining child support. Divided custody Example 5 referenced in *Hansen* contemplates that the child of the second marriage is a resident of the household of one of the parties. In the present case, counting Steven's two children who reside with him, and his son John who resides with Vickie, the schedule to be used is the three-child schedule. Preexisting support obligations in other cases, where one of the parties has been ordered to support a nonresidential child from another relationship, would be considered and adjusted at Line C.2. of the worksheet.

Vickie next contends the trial court abused its discretion in refusing to order more than $150 per month income withholding to be applied toward satisfaction of child support arrearages.

In her amended motion to increase child support and for related relief, Vickie did not specify an amount to be withheld to satisfy arrearages. When the court allowed $150 per month, the same amount that was being withheld under previous agreement of the parties, Vickie filed a motion to alter or amend the judgment. The trial court denied the motion on the basis that Vickie had not requested an increase.

Our standard of review is whether the trial court abused its discretion. Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. That is, discretion is abused only where no reasonable person would take the view adopted by the trial court. *In re Marriage of Case*, 19 Kan. App. 2d 883, 889, 879 P.2d 632 (1994).

K.S.A. 1994 Supp. 23-4,111(b) provides that the district court may modify an income withholding order on "request of the ob-

ligee." Vickie's argument that her motion to alter or amend the judgment constituted a request to increase the amount is not well taken. The purpose of the motion to alter or amend the judgment is to allow the trial court the opportunity to correct errors. *Hansen*, 18 Kan. App. 2d at 714. The trial court did not err. Vickie did not request a withholding increase, and there was no abuse of discretion in failing to order what was not requested. Vickie's remedy was and still is to file another motion with the trial court.

Reversed and remanded for consideration and application of the three-child families support schedule consistent with this opinion.