(185 P.3d 289)
No. 98,584

IN THE MATTER OF THE MARRIAGE OF RHONDA D. VANDER-VOORT, *Appellant*, and DIRK VANDERVOORT, JR., *Appellee*.

Opinion filed May 23, 2008.

*J. Steven Schweiker*, of Overland Park, for appellant.

*Dirk VanderVoort, Jr.*, appellee pro se.

Before HILL, P.J., GREEN and STANDRIDGE, JJ.

HILL, J: This appeal raises a question about the district court's interpretation of a separation agreement. At their divorce, Rhonda and Dirk VanderVoort agreed that her child support payments to Dirk would equal Dirk's maintenance payments to Rhonda, so no money would change hands. But when it comes to child support, Kansas courts are not bound by private agreements. Child support cannot be lowered or ended by agreement of only the parents. The ending of Dirk's maintenance debt because of Rhonda's remarriage does not erase her duty to pay child support. Because child support belongs to the children, we hold the district court's interpretation of the separation agreement is correct and Rhonda must pay. We differ with the court's calculation of the arrearage, though. Our Supreme Court has ruled that a child support order automatically ends when a child arrives at the age of 18. Because two of their four children were 18 before Rhonda married again, we hold the court must recalculate the arrearage.

*Contract clauses show "offsetting" terms for maintenance and child support.*

Rhonda and Dirk were married in 1982, and divorced on May 2, 2001. The parties have four children: Jeremy, born December 23, 1982; Gerrit, born February 24, 1986; Austin, born August 7, 1990; and Kendyl, born January 14, 1995. At the time of the divorce, Jeremy was 18 and enrolled in high school. The separation agreement contained separate clauses on maintenance and child support. We list them.

### Maintenance

"The husband shall pay, or be responsible for paying, spousal maintenance to the wife as and for her support in the exact amount that the wife is ordered, and will at any time be ordered, to pay husband as or for child support regarding their children for seven (7) years. Accordingly, the parties agree that husband's spousal

maintenance obligation to wife shall always equal any child support obligation that wife may have to husband, and the Court retains jurisdiction to change the amount of maintenance to always be equal to the child support in this matter for seven (7) years. Furthermore, as the husband's spousal maintenance obligation is, and shall be, equal to wife's child support obligation for seven (7) years, neither party shall be obligated to pay any amount of money to the other, and therefore there shall not be an income withholding order in this case. Although spousal maintenance shall be offset against the child support obligation, the parties agree that said sum would otherwise be $611.00 per month and the parties intend that there shall be a spousal maintenance tax deduction in favor of husband and a tax obligation to wife consistent with a $611.00 per month spousal maintenance payment from husband to wife for seven (7) years commencing April 1, 2001. Furthermore, the husband's maintenance obligation shall cease upon the death of either party, the remarriage of wife or wife's cohabitation with a[n] unmarried male in a marriage-like state as defined by Kansas law."

## Child Support

"As set forth in Section III, wife's obligation to pay chid support to husband shall be equal to husband's obligation to pay maintenance to wife. Therefore neither party shall be obligated to pay any amount of money to the other, and therefore there shall not be an income withholding order. The child support obligation of the wife would otherwise be $611.00 per month but again, is not owed by either party, and would cease in any event upon the occurrence of any one of the following events:

    i. the death of either party;

    ii. the death of the child;

    iii. the child attaining the age of 18 years, unless: (A) the parent or parents agree, by written agreement approved by the court to pay support beyond the time the child reaches 18 years of age; or (B) the child reaches 18 years of age before completing the child's high school education in which case the support shall not terminate automatically, unless otherwise ordered by the court, until June 30 of the school year during which the child became 18 years of age if the child is still attending high school; or (C) the child is still a *bona fide* high school student after June 30 of the school year during which the child became 18 years of age, in which case the court, on motion, may order support to continue through the school year during which the child becomes 19 years of age so long as the child is a *bona fide* high school student and the parents jointly participated or knowingly acquiesced in the decision which delayed the child's completion of high school;

    iv. the valid marriage of the child;

    v. the lawful entry of the child into the military services of the United States."

Rhonda married in January 2005, but Dirk did not know that until sometime in 2006. Once he learned of the marriage, Dirk

responded by filing, in September 2006, a motion "to establish child support arrears created by termination of maintenance." The court issued an agreed order that Dirk's maintenance abated on February 1, 2005. Finally in December 2006, the district court ruled Rhonda should have paid Dirk $611 per month in child support for the 14 months from February 2005 through April 2006. This amounted to $8,554.

Rhonda argues the separation agreement contained in the divorce decree is clear and unambiguous, and the district court erred by changing the agreement to create child support and maintenance duties independent of one another. Dirk, in his pro se brief, argues the district court correctly interpreted the separation agreement to contain separate clauses and determined that Rhonda's remarriage affected maintenance only.

*The district court's interpretation of the agreement is sound.*

This question is a matter of law. "The interpretation and legal effect of written instruments are matters of law, and an appellate court exercises unlimited review. Regardless of the construction given a written contract by the trial court, an appellate court may construe a written contract and determine its legal effect. [Citation omitted.]" *Unrau v. Kidron Bethel Retirement Services, Inc.*, 271 Kan. 743, 763, 27 P.3d 1 (2001).

This agreement is inconsistent. In the paragraph outlining Dirk's maintenance obligation, the agreement states: "[T]he husband's maintenance obligation shall cease upon the death of either party, the remarriage of wife or wife's cohabitation with a[n] unmarried male in a marriage-like state as defined by Kansas law." But there is no additional provision stating that once Rhonda remarries, her child support obligation will also cease. In the paragraph outlining Rhonda's child support obligation, the agreement provides for the automatic termination of child support by occurrences other than Rhonda's remarriage. The agreement states that Rhonda's child support would terminate upon the death of either party, the death of the child, the child attaining 18 years of age, the valid marriage of the child, or the entry of the child into the military. Again, there is no additional provision in the child support paragraph stating

that, upon these occurrences, Dirk's maintenance obligation will also cease. Clearly, even though the agreement states the two obligations offset one another, the agreement contains different provisions that only apply to one or the other. Inconsistency means ambiguity, and we therefore look further.

We think the district court's interpretation is sound when one considers the way the two obligations are treated under Kansas law. While Kansas law allows parties to agree upon terms for maintenance and limits the jurisdiction of courts to modify such terms, provisions in settlement agreements regarding child support "shall be subject to the control of the court." K.S.A. 60-1610(b)(3). Child support is a right belonging to the child and cannot be reduced or terminated by agreement between parents. *In re Marriage of Schoby*, 269 Kan. 114, Syl. ¶ 1, 4 P.3d 604 (2000). Even when courts make deviations from the recommended amounts in the Kansas Child Support Guidelines (Guidelines), courts must show that such deviations serve the best interests of the children. *In re Marriage of Aubuchon*, 22 Kan. App. 2d 181, 182, 913 P.2d 221 (1996).

Further, the district court was correct in its interpretation that Rhonda's remarriage terminated only Dirk's maintenance obligation and not Rhonda's child support obligation because parties cannot contractually reduce or terminate child support and cannot divest courts of the power to maintain jurisdiction over the custody, child support, and education of minor children. *Thompson v. Thompson*, 205 Kan. 630, 633, 470 P.2d 787 (1970); *Carey v. Carey*, 9 Kan. App. 2d 779, 781, 689 P.2d 917 (1984).

We fail to understand Rhonda's argument that the district court's interpretation in some way violates K.S.A. 60-1610(b)(3), which says issues contained in an agreement and incorporated in a decree, "other than matters pertaining to the legal custody, residency, visitation, parenting time, support or education of the minor children, shall not be subject to subsequent modification by the court except: (A) As prescribed by the agreement or (B) as subsequently consented to by the parties." It is obvious that this matter concerns the support of the minor children, and the court can ignore any contract provision that would illegally terminate child support.

We find no error here.

*Child support calculations must take into account the age of the children.*

Once the district court determined that the child support obligation did not end when the maintenance payments stopped, the court, when deciding if there was an arrearage, must take into account one of the fundamental principles of child support law. Child support automatically stops when the child is 18 (there are some exceptions).

Rhonda appropriately filed a motion to reconsider under K.S.A. 60-260(b) and demonstrated a right to relief. She sought relief because two of her four children reached majority prior to the date the district court used to calculate arrearage. This information, if known to the district court when it calculated arrearage, would have likely produced a different arrearage amount. Further, Rhonda's motion calls into question whether the judgment for arrears was void under K.S.A. 60-260(b)(4), whether a mistake existed in the court's calculations under K.S.A. 60-260(b)(1), and whether the catchall provision of K.S.A. 60-260(b)(6) applies because Rhonda was entitled to reduce her child support based on the majority age of two of her four children.

This court reviews the denial of relief under K.S.A. 60-260(b) using an abuse of discretion standard. *In re Marriage of Leedy*, 279 Kan. 311, 314, 109 P.3d 1130 (2005). But, the standard of review of a district court's order determining the amount of child support is whether the district court abused its discretion, while the interpretation and application of the Guidelines are subject to unlimited review. *In re Marriage of Paul*, 32 Kan. App. 2d 1023, 1024, 93 P.3d 734 (2004), *aff'd* 278 Kan. 808, 103 P.3d 976 (2005).

Rhonda filed a motion for the court to reconsider, pointing out that the amount of arrearage was incorrect because it included support for two emancipated children. The district court refused to correct the child support arrearage calculation for two reasons: (1) Rhonda failed to file a motion to modify child support, and (2) the court lacked jurisdiction to modify child support retroactively. This was an abuse of discretion and an error.

First, the district court forgot that a child reaching 18 years of age is one of the three events in Kansas which automatically terminates child support. The other two are death of the child or the death of the payor parent. *In re Marriage of Steven*, 30 Kan. App. 2d 794, 796, 48 P.3d 1284 (2002). In *Brady v. Brady*, 225 Kan. 485, Syl. ¶ 4, 592 P.2d 865 (1979), the Kansas Supreme Court held that a child support order shall terminate when such child attains the age of 18, unless the support continues by prior written agreement of the parties. The court found this method preferable because it avoids needless litigation as neither party has to seek an immediate court order to alter a child support obligation. This concept of automatic termination from *Brady* has been applied in cases decided after the adoption of the Guidelines. See *Steven*, 30 Kan. App. 2d at 796; *In re Marriage of Kasper*, 29 Kan. App. 2d 461, 462, 27 P.3d 948 (2001). Only if modification or termination of a child support obligation is sought for another reason must the appropriate parent seek prospective relief under K.S.A. 60-1610(a)(1). *Steven*, 30 Kan. App. 2d at 796.

Second, the separation agreement itself incorporated language conforming with K.S.A. 60-1610(a)(1): that child support shall cease upon the child attaining the age of 18 years, unless (1) the parents agree by written instrument to extend the time beyond when the child reaches 18 years of age, (2) the child reaches 18 years of age before completing high school in which case the support will terminate June 30 of the school year during which the child turned 18 years of age, or (3) the child is still a bona fide high school student and the court, on motion, orders support to continue through the school year during which the child turns 19 years of age.

Both Jeremy and Gerrit were no longer covered under the terms of the separation agreement when Rhonda remarried on January 28, 2005. Jeremy turned 18 years old during his last year of high school and thus his child support terminated June 30, 2001. While it is not clear from the record on appeal if Gerrit was attending high school upon turning 18, it is clear that at the latest, Gerrit's child support would have terminated June 30, 2004. No motion to

extend child support under the separation agreement appears in the record.

Third, the district court abused its discretion in determining it did not have jurisdiction to award the correct amount of child support retroactively. When a change in circumstances requires a party to file a motion to modify under K.S.A. 60-1610(a)(1), the court may make a modification of child support retroactive only to a date "at least one month after the date that the motion to modify was filed with the court." On the other hand, when a child turns 18 years old, K.S.A. 60-1610(a)(1) specifies that the support shall terminate upon the child turning 18, without necessity of a motion. No Kansas statute sets a retroactivity limitation on district courts to determine the correct arrearage when a child turns 18 years old. While it is true that "[a]ccrued, unpaid child support payments cannot be modified under K.S.A. 60-260(b)(6)," *Brady*, 225 Kan. 485, Syl. ¶ 2, when a district court incorrectly calculates child support, the appellate court should remand for a correct calculation. See *Kasper*, 29 Kan. App. 2d at 466. If a district court does not consider the fact that a child attained the age of majority in its calculation of child support arrearage, the support order is in error. *Patrzykont v. Patrzykont*, 7 Kan. App. 2d 533, 537, 644 P.2d 1009 (1982). We think the district court must now calculate the child support arrearage by using the Guidelines.

Rhonda asks the court to apply another rule from *Brady* in this case. In *Brady*, 225 Kan. at 491, our Supreme Court held that when a fixed sum is awarded for support for more than one child and the trial court does not specify an amount per child, the proper way to modify the amount is by dividing the lump sum proportionately and reducing the amount accordingly. Therefore with four children, if two turn 18, the child support would be halved. But *Brady* was decided before the adoption of the Guidelines. For purposes of calculation of child support, the law has changed and various schedules must be taken into account when making any child support determination.

The Guidelines are the "basis for establishing and reviewing child support orders in . . . Kansas, including cases settled by agreement of the parties. Judges and hearing officers must follow

the guidelines." Guidelines § I. (2007 Kan. Ct. R. Annot. 107); *In re Marriage of Schletzbaum,* 15 Kan. App. 2d 504, 506, 809 P.2d 1251 (1991). Use of the Guidelines is mandatory, and a failure to follow the Guidelines is reversible error. Further, any deviation from the amount of child support determined by the use of the Guidelines must be justified by written findings in the journal entry, failure to justify deviations by written findings is reversible error, and deviations must serve the best interests of the children. *In re Marriage of Thurmond,* 265 Kan. 715, 716, 962 P.2d 1064 (1998); *Aubuchon,* 22 Kan. App. 2d at 182.

We affirm the district court's interpretation of the contract but reverse and remand the case for recalculation of the child support