NOT DESIGNATED FOR PUBLICATION

No. 113,660

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KARA RUMBAUGH,
*Appellant/Cross-appellee*,

v.

DAVID PARK,
*Appellee/Cross-appellant*.

MEMORANDUM OPINION

Appeal from Nemaha District Court; JOHN L. WEINGART, judge. Opinion filed March 4, 2016. Affirmed in part, reversed in part, and remanded with directions.

*Marc H. Berry*, of Olathe Legal Clinic, LLC, of Olatha, for appellant/cross-appellee.

*Gordon R. Olson*, of Sabetha, for appellee/cross-appellant.

Before HILL, P.J., MCANANY and ARNOLD-BURGER, JJ.

*Per Curiam*:  This case involves cross-appeals between former spouses, David Park and Kara Rumbaugh. Kara contends the district court erred in the way it modified child support. David contends the district court erred in modifying child support by imputing $50,000 income to him, by failing to include an interstate pay differential, and by denying him an adjustment for transportation costs. He also claims the court erred in failing to conduct an in camera inspection of Kara's tax return. The matter was set on our appellate calendar for oral argument. David's counsel appeared and argued the cross-appeal. Kara's counsel did not appear.

1

The parties are well acquainted with the history of their marriage and the extensive history of the litigation between them since their divorce. We need not recount those facts here. We will refer to them as needed in the course of our analysis.

*Amount of Child Support*

In her appellate brief, Kara contends the district court erred in determining the amount of David's modified child support obligation. She argues that the district court should have followed the child support schedule contained in the parties' original 2004 Texas divorce decree in modifying child support in 2015, long after Kara had moved to Kansas. In essence, the Texas decree set child support for the two minor children at $1,102 per month, to be reduced to $881.60 per month once the older child reached age 18 and completed high school.

We have unlimited review over the interpretation and application of the Kansas Child Support Guidelines. We review a district court's order determining the amount of child support for any abuse of discretion. *In re Marriage of Wiese*, 41 Kan. App. 2d 553, 559, 203 P.3d 59 (2009). A judicial action constitutes an abuse of discretion if the action: (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012). The party claiming an abuse of discretion bears the burden of proof. *State v. Stafford*, 296 Kan. 25, 45, 290 P.3d 562 (2012).

Under K.S.A. 2015 Supp. 23-3005, the district court has the authority to modify child support. "Child support is a right belonging to the child." *In re Marriage of Vandervoort*, 39 Kan. App. 2d 724, 728, 185 P.3d 289 (2008). Thus, the parties cannot, by agreement, divest the district court of its authority to modify child support. See *Kraus v. Kraus*, 6 Kan. App. 2d 979, 981, 637 P.2d 429 (1981).

2

Kara moved to Kansas in 2008 and registered the Texas divorce decree in Kansas. She does not challenge the Kansas district court's jurisdiction to enter orders modifying child support. The Kansas district court entered child support orders in 2010 and 2011, and Kara did not challenge the court's authority to do so.

In modifying child support, the district court is required to follow the Guidelines. *In re Marriage of Cox*, 36 Kan. App. 2d 550, 553, 143 P.3d 677 (2006). Kara does not argue or otherwise demonstrate the district court's modification of child support was not in compliance with the Guidelines. She has failed to establish an abuse of discretion in the district court's use of the Guidelines and its refusal to consider itself bound by the child support provisions in the 2004 Texas divorce decree. See *Stafford*, 296 Kan. at 45.

*Retroactivity of Child Support Order*

Kara also contends in her appellate brief that under the parties' original divorce decree, the district court should have ordered Park's child support obligation to commence retroactively as of April 19, 2012, when the parties' middle child had completed high school and had turned age 18. She argues "an agreement that triggers a date to automatically modify child support should be enforceable, particularly when that date is the result of a fairly typical child support event like another child turning 18 years old or graduating from high school."

Generally, termination of child support occurs automatically when the child reaches age 18, the child dies, or the payor parent dies. *In re Marriage of Vandervoort*, 39 Kan. App. 2d at 730. But the Kansas Supreme Court has recognized that child support may be continued beyond the child's 18th birthday by prior written agreement of the parties. *Brady v. Brady*, 225 Kan. 485, Syl. ¶ 4, 592 P.2d 865 (1979). Although *Brady* was decided before the adoption of the Guidelines, the legislature incorporated this exception in K.S.A. 2015 Supp. 23-3001(b)(1).

3

But the district court was not controlled by the Texas decree when it came to the effective date of David's modified child support obligation. Kara filed her motion to enforce the original 2004 Texas child support order on September 30, 2014. The district court's hearing was in February 2015. The district court entered its order modifying child support in March 2015. That order was retroactive to December 1, 2014. David was unemployed through no fault of his own throughout this period. Under K.S.A. 2015 Supp. 23-3005(b), the district court *may* make its order modifying child support to the first day of the month following the filing of the motion, but it is not required to do so. Kara has not shown that the district court abused its discretion in making its child support order effective December 1, 2014.

*Imputation of Income for Calculating Child Support*

In his cross-appeal, David first contends that in setting his child support obligation for his younger child the district court erred by imputing $50,000 income to him.

We review an order determining the amount of child support for an abuse of discretion. Interpretation and application of the Guidelines are subject to unlimited review. *In re Marriage of Wiese*, 41 Kan. App. 2d at 559. As we noted earlier, a judicial action constitutes an abuse of discretion if it:  (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *Ward*, 292 Kan. at 550. The party claiming an abuse of discretion bears the burden of proof. *Stafford*, 296 Kan. at 45.

David argues the district court abused its discretion by not providing adequate reasons for imputing $50,000 income to him. The Guidelines allow a district court to impute income "to the parent not having primary residency in appropriate circumstances." Guidelines § II.F.1 (2015 Kan. Ct. R. Annot. 114). Those circumstances include the following:

● unemployed—impute *at least* the federal minimum wage for 40 hours per week.

● deliberately unemployed when capable of working full time—impute income based on parent's recent work history, occupational skills, and prevailing job opportunities in the community.

● terminated from employment for misconduct—may impute previous wage but not less than federal minimum wage.

● significant in-kind payments that reduce personal living expenses (*e.g.*, company car, free housing, etc.)—value added to gross income.

● deliberately underemployed to avoid child support—evaluate circumstances to determine whether to use actual or potential earnings.

There was no evidence presented at the December 2014 hearing that David's unemployment was intentional or due to any fault on his part. At the hearing David reported that his 2012 adjusted gross income was $118,000. For 2013 his income, including a $38,000 severance package from his employer, was $109,113. He estimated that his 2014 income would be about $68,000, which included $24,180 he received that year in unemployment benefits from the Texas Workforce Commission.

David's average income for the 3 years preceding the hearing was approximately $98,000. His income for the current year was about $68,000. In the midst of the hearing, after having just concluded the portion of the hearing regarding the income to be attributed to each party, the court announced that it would impute to David an income of $50,000 per year. David did not object to the adequacy of the district court's findings in this regard. Though he filed a motion for a rehearing, that motion dealt with long-distance visitation costs and did not address the issue of David's imputed income or the adequacy

of the district court's findings on that issue. But he now contends on appeal that the district court erred in not making specific findings to support the imputation of $50,000 income to him.

When no objection is made to the adequacy of the district court's findings of fact, an appellate court can presume that the district court found all facts necessary to support its judgment. An appellate court will consider a remand only when the record does not support such a presumption and when the lack of specific findings *precludes* meaningful review. See *O'Brien v. Leegin Creative Leather Products, Inc.*, 294 Kan. 318, 361, 277 P.3d 1062 (2012).

Because the district court made its finding regarding David's imputed wage immediately after that portion of the hearing devoted to determining the incomes of the parties, the lack of more specific findings does not preclude a meaningful review. From our examination of the record of the hearing, it is apparent that the district court discerned a pattern of declining income for David and interpolated an annual income between the datum points on this declining line and the federal minimum wage for full-time work. The federal minimum wage is not the default wage for an unemployed parent. It is merely a minimum beyond which the court cannot go. There is substantial evidence to support the district court's imputation of $50,000 income to David, and the district court did not abuse its discretion in imputing that annual wage to him.

*Interstate Differential Allowance*

Next, David argues the district court abused its discretion when it decided not to consider the interstate pay differential. David resides in Texas, and Kara resides in Kansas.

The Guidelines provide a cost-of-living adjustment based on the difference in average earnings between individuals in different states. Although the Guidelines are mandatory, a district court's utilization of the interstate pay differential is discretionary.

In his response to Kara's motion, David noted: "14. The original child support worksheet factored in the cost of living differential which is today .8151 factor. Multiply David Park's gross income times .8151. This exemption should continue." At the time of the hearing, Kara's counsel had not prepared a proposed child support worksheet. David's counsel advised the court that he had prepared a child support worksheet, but we do not find it in the record and David does not direct us to it.

After discussing the imputation of income to the parties and the issue of health insurance for the parties' minor son, the court addressed possible adjustments in the child support calculation and directed the attorneys to consult with one another in the hopes of arriving at an agreed child support worksheet. David's counsel then raised the issue of the interstate pay differential adjustment. Mr. Olson represented David, and Mr. Berry represented Kara.

"MR. OLSON: And my client also, he lives in Texas, so there would be—

"THE COURT: What—

"MR. OLSON: There's interstate, there's interstate—

"THE COURT: You don't want that, because Texas is—According to the Republican party, that's where we all should be living, anyway, is in Texas. No state income tax?

"MR. OLSON: It's much more expensive, yes.

"THE COURT: Everything's wonderful down there.

"MR. BERRY:  I think it would be worse, right.

"THE COURT:   I don't think you want that. I think I'd leave that off.
          "Anyway. Okay? Anything else?

"THE RESPONDENT:  No, it's the interstate—

"MR. OLSON:  Just a second.

"THE RESPONDENT:  Okay.

"THE COURT:  I'm not going to—

"THE RESPONDENT:  Your Honor—

"THE COURT:  The child's here. The cost of the child is here. So I'm not too interested in adjustment because one—

"MR. OLSON:  Right, but we've been using it before, Judge.

"THE COURT: Well, it's a new world now. It's a new child support worksheet.

"MR. OLSON: Yeah, but the Bradley software—

"THE COURT:  I don't care about Bradley software. This is my courtroom, Gordon. (Slamming bench.) Do your child support by hand. Do it with any app that you would like, but Bradley software is not controlling authority. Okay?

"THE RESPONDENT:  Your—

"THE COURT:  All right. Anything else?"

We have noted that application of the intestate pay differential is discretionary. In considering this issue, we examine the record to see if the district court abused that discretion. As noted earlier, the court abuses its discretion when its order: (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *Ward*, 292 Kan. at 550.

We are forced to say that the district court's rationale for rejecting the application of the interstate pay differential clearly was arbitrary and fanciful. Further, it was based on an error of law. It appears that the district court predicated its rejection of the interstate pay differential on the fact that the child was in Kansas without regard to the differential in pay between Texas and Kansas.

The interstate pay differential adjusts a party's income in another state to what that income would be in Kansas in order to compute a fair level of child support. Appendix IV to the Guidelines demonstrates this by the example of a parent living in Alaska who earns $3,000 per month. Guidelines Appendix IV (2015 Kan. Ct. R. Annot. 167.) Under this example, the Kansas average weekly wage ($812), when divided by the Alaska average weekly wage ($987), yields a factor of .8227. When this factor is applied to the Alaskan parent's $3,000 monthly income, it results in a comparable Kansas income of $2,468.10, which is the amount used in calculating the Alaskan parent's child support.

Here, the court rejected the notion of an interstate pay differential adjustment without giving it any reasonable consideration. Accordingly, we must reverse and remand with directions that the district court reconsider the application of the interstate pay differential in calculating David's child support obligation.

*Parenting Time Adjustment*

In his statement of the issues raised in the cross-appeal, David stated that the district court abused its discretion in, among other things, "denying long distance visitation/parenting time adjustment." In his appellate brief David addressed the issue of an adjustment for transportation costs associated with parenting time, but he failed to address the issue of a parenting time adjustment. A point raised incidentally and not argued is deemed waived and abandoned. Moreover, failure to support an argument with pertinent authority or show why an argument is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue. *State v. Berriozabal*, 291 Kan. 568, 594, 243 P.3d 352 (2010). This issue has been abandoned.

*Adjustment for Transportation Costs*

Next, David claims the district court abused its discretion by failing to grant him an adjustment for transportation costs incurred when he and the child travel between Texas and Kansas, where Kara lives.

The Guidelines instruct: "Any substantial and reasonable long-distance transportation/communication costs directly associated with parenting time shall be considered by the court." Guidelines § IV.E.1 (2015 Kan. Ct. R. Annot. 126). The amount allowed by the district court, if any, should be entered on Line E.1 of the child support worksheet. Guidelines § IV.E.1. A district court need not make an adjustment for transportation costs if the facts of the particular case do not warrant it. *In re Marriage of McHenry*, No. 109,117, 2014 WL 1096729, at *2 (Kan. App. 2014) (unpublished opinion). Moreover, whether to make an adjustment is a decision within the district court's discretion. Guidelines § IV.E (2015 Kan. Ct. R. Annot. 126).

10

To determine whether to provide a long-distance travel adjustment, a district court should consider "(1) which party moved away, thereby causing the expense; (2) the reasonableness of the expenditure; (3) the amount of the expense; and (4) the other relevant factors, which relate to whether the parties should be given a credit or share in the expenses." *In re Parentage of Brown*, 39 Kan. App. 2d 26, 29, 176 P.3d 242 (2008).

At the hearing, in discussing the child support worksheet the parties were to prepare and submit to the court, the court stated: "[David] should be allowed some adjustment for long distance visitation." The court then asked Kara's counsel: "Did you allow—[i]n your proposal, what—[a]ny suggestions on that? Because my understanding is, it was [Kara's] choice to move to Kansas." Kara's counsel responded that his worksheet had a parenting time adjustment of $46 per month, but he thought that amount needed an adjustment. He noted that David did not always fly his son back and Kara was driving down to Texas or driving her son back from Texas. The court instructed: "But I would like for—[t]here should be a long distance parenting adjustment on that worksheet, okay?"

The parties could not agree on a child support worksheet. David submitted one that calculated that his child support obligation was $669. Kara's worksheet calculated that David's child support obligation was $682. Surprisingly, neither party included an adjustment for long-distance parenting time costs. The district court adopted Kara's worksheet in setting David's child support obligation. In doing so, the court noted: "The Court has always ordered shared cost of visitation and no parenting time adjustment."

The court's journal entry clearly conflicts with the court's statements at the hearing regarding this adjustment. But in a civil action, the provisions of the written journal entry take precedence over oral pronouncements from the bench. *Valdez v. Emmis Communications*, 290 Kan. 472, 482, 229 P.3d 389 (2010). Here, it appears that the district court ultimately concluded that costs associated with travel back and forth

11

between Texas and Kansas for parenting time should be split evenly between the parties. In doing so, the court accounted for David's travel expenses and equitably divided all travel expenses between the parties. We find no abuse of discretion in doing so.

*Rumbaugh's Tax Return*

Finally, Park contends the district court abused its discretion by failing to conduct an in camera inspection of Rumbaugh's tax return to determine whether she had reported income and expenses in connection with businesses Kara characterized as hobbies.

Under the Guidelines, "[t]he party requesting a child support order or modification shall present to the court a completed worksheet, together with a completed Domestic Relations Affidavit." Guidelines § III.A (2015 Kan. Ct. R. Annot. 115). The domestic relations affidavit requires the party to set forth all sources of income, including self-employment income, under oath and penalty of perjury. Guidelines Appendix III (2015 Kan. Ct. R. Annot. 159).

Although Kara did not have a child support worksheet for the court at the hearing, she had prepared and submitted to the court a domestic relations affidavit which her attorney prepared using her tax return. Under oath, Kara stated that she did not have any self-employment income and any reported farming income was solely attributable to her husband.

Further, we do not find in the record any request by David or his counsel that the court conduct an in camera inspection of Kara's tax return. He contends, in essence, that the district court erred in not conducting an inspection that David never asked for. David provides no persuasive authority that the district court is obliged *sua sponte* to seek out evidence to support or undermine the position taken by a litigant at a hearing. David has

12

failed to establish that the district court abused its discretion by failing to review Kara's tax return.

Affirmed in part, reversed in part, and remanded with directions.