(803 P.2d 207)

No. 65,164

In the Matter of the Marriage of PATRICIA ANN MCPHETER, *Appellant*, and GORDON LEE MCPHETER, *Appellee*.

—

Opinion filed December 14, 1990.

*Gene F. Anderson*, of Anderson & Wichman, of Hays, for the appellant.

*Gordon L. McPheter*, appellee, pro se.

Before BRISCOE, C.J., GERNON, J., and JANICE D. RUSSELL, District Judge, assigned.

BRISCOE, C.J.: Petitioner Patricia McPheter appeals the trial court's refusal to consider respondent Gordon McPheter's Navy reserve pay as domestic gross income, as defined in the 1990 Kansas Child Support Guidelines. Gordon cross-appeals, contending the trial court erred in finding him liable for 50 percent of the cost of transporting the children to his residence for visitation purposes and in calculating the extent of the abatement of child support payments during the months when the children are in his custody.

Since the parties' divorce, their two minor children have resided with Patricia, with Gordon exercising his visitation rights. In 1988, the trial court awarded Patricia $710 per month in child

support. That order was appealed on the same three issues presently before this court (*In re Marriage of McPheter*, No. 62,596, unpublished opinion filed May 12, 1989). This court upheld the trial court's determination that Gordon's reserve pay need not be included in calculating his domestic gross income due to the "iffy" nature of the job. This court also held that "[i]nclusion of visitation expenses lies within the court's discretion" and that the trial court did not err in abating the entire amount of child support during the time the children were with Gordon.

The present journal entry provides that the costs of transporting the children during visitation will be split 50/50; that Gordon's reserve pay not be included in computing his domestic gross income; and that Gordon receive a $300 annual reduction from child support payments for the time the children are with him. Therefore, no adjustment for the time the children spend with Gordon would be made in the child support calculations.

The standard of appellate review applicable to an appeal from a trial court's order determining the amount of child support is whether the trial court abused its discretion. *Thompson v. Thompson*, 205 Kan. 630, 631, 470 P.2d 787 (1970). Judicial discretion is abused when action is arbitrary, fanciful, or unreasonable, which is another way of saying discretion is abused when no reasonable person would take the view adopted by the trial court. *Stayton v. Stayton*, 211 Kan. 560, 562, 506 P.2d 1172 (1973).

Patricia argues the 1990 Kansas Child Support Guidelines require the inclusion of the reserve pay as part of Gordon's domestic gross income. "Domestic gross income" is defined as "income from all sources, excluding public assistance." 1990 Kan. Ct. R. Annot. 58. "This includes every conceivable form of income, whether it be in the form of earnings, royalties, bonuses, dividends, interest, maintenance, rent, or whatever." 2 Elrod, Kansas Family Law Handbook § 14.024, p. 14-11 (rev. 1990). Under prior guidelines, a party's "gross income" was defined as "income from any source including imputed income, but does not include benefits received from public assistance programs." 1988 Kan. Ct. R. Annot. 56. The definition has not changed substantially since the previous appeal; however, the specificity of the guidelines has changed.

The guidelines provide:

"The financial situation of the parties may be reason to deviate from the calculated Net Parental Child Support Obligation if the deviation is in the best interests of the child. If either party has more than one job, the circumstances requiring the additional employment should be considered. If the additional employment was historically relied upon by the parties prior to the dissolution of the relationship, then all of the income should be included in the calculation of the child support obligation. However, if the additional employment was secured after the dissolution of the relationship in an effort to meet additional financial responsibilities, consideration should be given to that circumstance, provided that the Court shall keep in mind the best interest of the child. In such a situation, two Worksheets can be prepared with one Worksheet including all income and the other Worksheet including only the primary employment to determine the margin for deviation. The amount considered should be entered on Line E.8." 1990 Kan. Ct. R. Annot. 69.

Line E.8 of the worksheet falls under the "Child Support Adjustments" section.

"The party requesting the adjustment is responsible for proving the basis for the adjustment. For every Child Support Adjustment, it should be noted on the Worksheet whether the adjustment was considered or is not applicable to the particular case. If the adjustment is considered, the amount considered should be noted on the appropriate line in Section E. After all applicable Child Support Adjustments have been noted on the Worksheet by the Court, the amounts should be totaled." 1990 Kan. Ct. R. Annot. 66-67.

This total is then added or subtracted, according to the trial court's discretion, from the "Net Parental Child Support Obligation," leaving the court with the "Adjusted Child Support Obligation." This is the final obligation owed by each party.

At trial, Patricia testified that, prior to their divorce, Gordon's reserve pay was used for family purposes. This statement was not rebutted by Gordon. The trial court, noting the adjustments section of the worksheet, held those adjustments remain discretionary. With this, we agree. However, the guidelines clearly indicate that, if the reserve pay was relied on by the parties prior to the divorce, then it should be included in the computation of Gordon's domestic gross income. This language precludes the trial court from omitting the pay merely because the job was "iffy." Further, as the trial court acknowledged, it is difficult to consider Gordon's reserve pay "iffy" as he continued to receive this pay on a regular basis during the two-year period since the court last

ruled on the issue. The trial court abused its discretion in not adding the reserve pay to the "Gross Income Calculation." This opinion does not conflict with the previous opinion of this court because this case involves the more specific 1990 guidelines.

In his cross-appeal, Gordon contends the additional expenses of transporting the children during visitation periods should be borne by Patricia, since she is the one who moved. Patricia testified that she moved to obtain employment. Noting that Patricia had a legitimate reason for moving, the trial court ordered that the cost be split 50/50 by the parties.

The guidelines provide that "[a]ny substantial and reasonable long-distance transportation/communication costs directly associated with visitation shall be considered by the Court. The amount considered should be entered on Line E.1." 1990 Kan. Ct. R. Annot. 67. The court should consider:

"a. who moved away, occasioning the additional expense,
"b. the reasonableness of the expenditure,
"c. the amount of expense incurred, and
"d. any other relevant factors which relate to whether the parties should be given a credit or share in the expense." Kansas Family Law Handbook § 14.027, p. 14-17.

Any determination as to this section is to be noted in section E.1 of the worksheet. Although it cannot be said that one party's move to a distant location should not weigh against that party, the trial court thoroughly considered the issue and we find no abuse of discretion.

Gordon also contends the trial court erred in calculating the extent of the abatement of child support payments during the months when the children are in his custody.

At trial, Patricia indicated her expenses are $300 per month less when the children are with Gordon. Apparently basing its decision on that testimony, the trial court held that Gordon would receive a "one-time $300.00 reduction in child support during [the] two-month summer visitation." The trial court stated: "There will be no adjustment on the child support guidelines for time spent with a non-custodial parent because I have handled it in this fashion."

The guidelines provide:

"The Court may consider giving credit for the time spent with the non-custodial parent, and when the time spent with the noncustodial parent exceeds thirty (30%) of the child's time or when the noncustodial parent has the child for a single block of time (including custodial parent's visitation) in excess of thirty days, the Court shall consider the increased costs to the noncustodial parent and the savings to the custodial parent and may adjust the child support accordingly.

"In instances when a child spends in excess of thirty (30) consecutive days with the noncustodial parent, the Court shall determine whether an adjustment in child support is appropriate, giving consideration to the fixed obligations of the custodial parent which are attributable to the child and to the increased cost to the noncustodial parent attributable to the child's visit. Any reduction shall not leave the custodial parent with less than 33% of the Combined Total Child Support Obligation (Line D.6.).

"The amount considered should be entered on Line E.2." 1990 Kan. Ct. R. Annot. 67.

Subsection E.2 of the worksheet falls under the "Child Support Adjustments" section. This section requires that the court consider any money saved by the custodial parent when the child is residing with the noncustodial parent. A review of the record reveals the trial court considered the factor. There was no abuse of discretion.

Reversed and remanded with instructions to consider Gordon's reserve pay as income. If the trial court finds adequate reasons for deducting a portion of that income as an adjustment, the court should note this by referencing the amount in the adjustments section of the worksheet. The issues raised in Gordon's cross-appeal are affirmed.